IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 06-35051 |
| | § | (Chapter 13) |
| WARDELL JONES | § | |
| Debtor | § | |

MEMORANDUM OPINION ON OBJECTION OF TAXING AUTHORITY TO
SUMMARY PLAN CONFIRMATION
[Docket No. 40]

## I.   INTRODUCTION

In his proposed Chapter 13 plan, Wardell Jones (the Debtor) proposes to pay Montgomery County (the County), a taxing authority, the state statutory interest rate on the principal tax claim, but proposes to pay no interest on the penalties, interest and legal fees related to the tax claim. The County asserts that it has an oversecured claim under 11 U.S.C. § 506(b) and is therefore entitled to interest not only on the taxes owed, but also on interest, penalties, and legal fees.[1] The Debtor argues that 11 U.S.C. § 511, recently enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), serves to limit the interest on tax claims to the amounts allowed under applicable nonbankruptcy law, and that the applicable Texas statute in this case permits interest only on principal and not on penalties, interest or legal fees. The Court finds that the Debtor's argument is correct and that after the passage of 11 U.S.C. § 511, the Court is without discretion to set an equitable rate of interest on tax claims. Furthermore, the applicable

---

[1] The term "penalties" does not appear in 11 U.S.C. § 506(b); rather the word "charges" is used. The applicable Texas statute, however, uses the word "penalties" instead of "charges." In the case at bar, both parties use the term penalties.

Texas statute does not allow the County to claim interest on anything above the principal of its claim. Accordingly, the Objection of Taxing Authority to Summary Plan Confirmation is overruled.

## II. FINDINGS OF FACT

1. On September 29, 2006, the Debtor filed his voluntary Chapter 13 petition [Docket No. 1] and original Chapter 13 plan. [Docket No. 2.][2]

2. On October 27, 2006, the County filed an original proof of claim for pre-petition real-property *ad valorem* taxes for 2005 and 2006 in the amount of $10,791.97. [Proof of Claim 4.]

3. The claim filed by Montgomery County establishes a base tax claim of $8,785.95, as well as penalties and interest of $911.82, and legal fees of $1,094.20. [Proof of Claim 4.]

4. The real property, including land and improvement, has been valued at $179,970.00 by the County. [Proof of Claim 4.]

5. On December 11, 2006, the County filed its Objection of Taxing Authority to Summary Plan Confirmation (the Objection) on the grounds that the Debtor's plan did not provide for the County's claim. [Docket No. 40.]

6. In the Objection, the County also averred that its entire claim—base, penalties and interest, and legal fees—should be paid with interest at the rate of 12.00% per annum pursuant to Texas Property Tax Code § 33.01(a). [Docket No. 40.]

7. On January 19, 2007, the Debtor filed his Amended Chapter 13 Plan (the Amended Plan). [Docket No. 52.]

---

[2] In this Memorandum Opinion, all docket citations refer to the docket sheet in Case No. 06-35051.

2

8. The Amended Plan fully provided for the County's claim, but included interest only on the base claim. Specifically, the base claim will bear 12.00% interest, while the penalties and interest portion of the County's claim will bear no interest.[3] [Docket No. 52.]

9. On February 5, 2007, the County filed its Brief in Support of Montgomery County's Objection to Debtor's Amended Chapter 13 Plan. [Docket No. 59.]

10. On February 20, 2007, the Debtor filed his Brief Regarding Appropriate Interest Rate for Secured Tax Claims in Chapter 13. [Docket No. 60.]

### III. CONCLUSIONS OF LAW

#### A. Rights of an oversecured creditor under 11 U.S.C. § 506(b)

Section 506(b) provides that an oversecured creditor may include in its claim "interest on such claim, and any reasonable fees, costs or charges provided for under the agreement *or State statute.*" 11 U.S.C. § 506(b)(emphasis added).[4] The phrase "or State statute" was added to § 506(b) as part of BAPCPA. This language is consistent with, and codifies the holding in, *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989). In *Ron Pair*, the Supreme Court held that the provision for oversecured creditors in § 506(b) applies not only to holders of consensual liens, but also to holders of nonconsensual liens, such as taxing authorities. *Id.* at 237. Thus, the additional language in § 506(b) does not change the analysis of this Court; it merely reinforces by statute a rule which has existed for over 15 years.

"The creditor though bears the ultimate burden to prove by a preponderance of evidence its entitlement to postpetition interest, that is, that its claim was oversecured, to what extent, and for

---

[3] Although the Amended Plan identified the penalties and interest part of the County's claim as "P & I," the actual amount included not just penalties and interest, but also legal fees.

[4] Unless otherwise noted, all section references refer to sections of 11 U.S.C.

3

what period of time." *Matter of T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 798 (5th Cir. 1997) (citing *In re Grabill Corp.*, 121 B.R. 983, 991-92 (Bankr. N.D. Ill. 1990)). In the instant case, the County is an oversecured creditor for purposes of § 506(b) because the appraised value of the Debtor's homestead is $179,970.00 and the County's proof of claim, including penalties, fees, and interest, is only for $10,791.97. Since the County is oversecured, it is allowed to recover "interest on such claim, and any reasonable fees, costs, or charges provided for under the . . . State statute under which such claim arose." 11 U.S.C. § 506(b). The Debtor does not dispute the County's status as an oversecured creditor or its claim for penalties, legal fees or interest on the principal. The Debtor does, however, dispute the County's entitlement to charge interest on interest, interest on penalties, and interest on legal fees.

    **B.**    **Limits on the interest rate of a tax claim under 11 U.S.C. § 511**

Although the right of an oversecured creditor to claim interest is established in § 506(b), that section of the Code is silent regarding what interest rate the creditor may charge and on what amounts the creditor may calculate interest. Prior to the enactment of § 511 as part of the BAPCPA amendments, this Court would have turned to the Supreme Court's ruling in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004). *Till*, which applies to both consensual and nonconsensual liens, instructs the bankruptcy courts, when dealing with the "cram down" provision of § 1325(a)(5)(B)(ii), to set an interest rate by increasing the national prime rate by an appropriate amount to account for the increased risk of default for that particular creditor (referred to as the "prime-plus" method). *Id.* at 471. Typically, this Court would hold a hearing and consider evidence and arguments on the level of risk from both the creditor and the debtor. *Id.* at 479. Therefore, prior to the enactment of BAPCPA, this Court would have applied the prime-plus formula. It may have considered evidence

of a state statutory interest rate, but would not have been obligated to apply that rate. *See In re Process Property Corp.*, 327 B.R. 603, 610 (Bankr. N.D. Tex. 2005) (rejecting the rate found in Tex. Tax Code § 33.01 and instead using its discretion to set an equitable interest rate based on the circumstances of the particular case).

For purposes of tax claims, it appears that Congress intended to remove the bankruptcy court's equitable discretion under *Till* to determine an appropriate interest rate on a case-by-case basis and replace it with a uniform rate applicable to all tax claims. BAPCPA introduced new § 511, which is titled "Rate of interest on tax claims" and states that:

> (a) If any provision of this title requires the payment of interest on a tax claim or an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.
> (b) In the case of taxes paid under a confirmed plan under this title, the rate of interest shall be determined as of the calendar month in which the plan is confirmed.

"The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Ron Pair*, 489 U.S. at 242. The plain meaning of § 511 is unambiguous: the bankruptcy court must refer to state law and may no longer use its equitable powers to alter the interest rate on a tax claim from the rate set forth under the applicable state law.[5] *See* 4 Collier on Bankruptcy ¶ 511.01 ("The purpose of section 511 is to establish uniformity in the rate of interest paid on deferred tax claims . . . it has the effect of circumscribing by statute the impact of the U.S. Supreme Court's decision in *Till v. SCS Credit Corp.*").

---

[5] Section 511 refers to "applicable nonbankruptcy law," which could mean applicable state law or applicable nonbankruptcy federal law. In the case at bar, it is a state statute, Tex. Tax Code § 33.01, which is the applicable nonbankruptcy law.

### C. Under applicable Texas law, the County may claim 12.00% interest only as to the principal of its claim and has no statutory right to interest on interest, interest on penalties, or interest on legal fees.

In the case at bar, the County and the Debtor agree on the applicable nonbankruptcy law.[6] Both parties agree that the County is entitled to 12.00% interest pursuant to Tex. Tax Code § 33.01(a). The dispute between the parties is limited to the amount on which 12.00% interest should accrue. The Debtor asserts that under Texas law, the County may receive interest only on the principal of the tax claim, and not interest on the remainder of its claim, ie., on penalties, interest and legal fees. The County argues that § 511 merely sets the interest rate and the determination of what amounts accrue interest has not changed with the passage of BAPCPA.[7]

Tex. Tax Code § 33.01 provides:

(a) A delinquent tax incurs a penalty of six percent of the amount of the tax for the first calendar month it is delinquent plus one percent for each additional month or portion of a month the tax remains unpaid prior to July 1 of the year in which it becomes delinquent. However, a *tax delinquent on July 1 incurs a total penalty of twelve percent of the amount of the delinquent tax without regard to the number of months the tax has been delinquent.* A delinquent tax continues to incur the penalty provided by this subsection as long as the tax remains unpaid, regardless of whether a judgment for the delinquent tax has been rendered.
. . .
(c) A delinquent tax accrues interest at a rate of one percent for each month or portion of a month the tax remains unpaid. *Interest payable under this section is to compensate the taxing unit for revenue lost because of the delinquency.* A delinquent tax continues to accrue interest under this subsection as long as the tax remains unpaid, regardless of whether a judgment for the delinquent tax has been rendered.

TEX. TAX CODE § 33.01 (emphasis added).

---

[6] *See Matagorda County v. Law*, 19 F.3d 215, 218 (5th Cir. 1994) (providing a concise overview of the different parts of an allowable tax lien under Texas state law).

[7] This Court has found only one published case on § 511. *In re Davis*, 352 B.R. 651 (Bankr. N.D. Tex. 2006). The court in *Davis* rejected the County's reading of § 511, holding that § 511 determined whether the creditor was entitled to receive interest at all, not just what rate the interest should be. *Id.* at 653. The issue facing the court in *Davis* was whether a claim could still be classified as a "tax claim" for purposes of § 511 after the claim had been sold to a private third party and the tax debt was no longer owed to a governmental entity. *Id.* at 654-55. The issue in the case at bar—whether a taxing authority may claim interest on interest, interest on penalties, and interest on fees under Texas law—was not addressed.

This purpose of this statute, as described in subsection (c), is to compensate the taxing unit with interest for the lost time-value of money in deferring the payment of taxes. *See Galveston Independent School Dist. v. Heartland Fed. Sav. and Loan Ass'n*, 159 B.R. 198, 204-205 (S.D. Tex. 1993); *Irving Independent School Dist. v. Packard Prop.*, 970 F.2d 58, 65 (5th Cir. 1992). Nothing in this statute refers to the County's authority to charge interest on interest, interest on penalties and interest on legal fees. Nor has the County cited any Texas statute or Texas case interpreting Tex. Tax Code § 33.01 that allows for a taxing unit to charge interest on anything but the principal tax claim. The right to charge legal fees and other costs is derived from Tex. Tax Code § 33.48, or alternatively Tex. Tax Code § 33.07. *Heartland*, 198 B.R. at 206. These statutes allow for a charge of attorney's fees up to 15% of the total amount of taxes, penalties, and interest due the taxing unit, but are completely silent on the issue of whether interest may be charged on those attorney's fees.

The County also argues that the correct Code section under which to analyze whether it is allowed to charge interest on interest and interest on fees is not § 511, but rather § 506(b) as interpreted by *Ron Pair*. If the County was the holder of something other than a tax claim, this would be the correct analysis. However, since this is a tax claim, the Court must apply the specific language of the recently enacted § 511, which requires interest to be established by reference to applicable nonbankruptcy law—in this case, Texas state law. The County has not provided, and this Court in unable to find, any Texas statutory authority for granting interest on interest, interest on penalties, or interest on fees. Therefore, the Court must limit the interest to 12.00% on the principal of the County's claim.

### IV. CONCLUSION

Whether viewed under § 506(b) or § 511, the holder of a tax lien must establish that applicable state law authorizes interest, penalties and fees in addition to the principal of its claim.

7

Here, there is no dispute that the County is entitled to the principal of its claim, plus interest on that principal of 12.00% per anum, plus reasonable attorneys' fees, costs and penalties. However, the County is not entitled to interest on interest, nor is the County entitled to interest on the attorney's fees, costs, and penalties.

In the wake of the passage of BAPCPA, the Court lacks discretion to equitably determine the appropriate interest rate to be paid on a tax claim, provided that interest is allowed at all. Under § 511, the Court is bound to enforce the interest rate set forth in the applicable state law. In the present case, the County has shown that Texas law allows it to charge penalties, legal fees and 12.00% interest on the principal. However, the County has not shown that Texas law authorizes it to charge 12.00%—or any rate of interest—on amounts above the principal. Accordingly, none will be allowed.

An Order consistent with the Memorandum Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed this 18th day of April, 2007.

Jeff Bohm
U.S. Bankruptcy Judge